# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

JEFFERY DALE GRANTHAM,        )
                              )
     Plaintiff,        )
                              )
     v.                   )     CV 219-065
                              )
CSX TRANSPORTATION, INC., BRIAN )
MURRAY, REBECCA GARDNER, and GUS )
THOELE,                    )
                              )
     Defendants.      )

## ORDER

The Court has reviewed Defendant CSX Transportation, Inc's ("CSX"), Brian Murray's, Rebecca Gardner's and Gus Thoele's (collectively "Defendants") motion for summary judgment, dkt. no. 46, and Plaintiff Jeffery Grantham's partial motion for summary judgment, dkt. no. 52. For the reasons stated below, Defendants' motion is **DENIED in part and GRANTED in part** and Plaintiff's partial motion is **DENIED**.

## BACKGROUND

In this case, Plaintiff Jeffery Grantham claims that he was retaliated against by Defendant CSX for reporting defective railcars during a brake test at Rice Yard on June 30, 2017.  Dkt. No. 47 at 1.  At the times in question, Plaintiff worked as a car inspector at CSX's Rice Yard in Waycross, Georgia.  Dkt. No. 47-1

at 143.  Plaintiff's job duties require him to check railcars to ensure they are safe and comply with all Federal Railroad Administration regulations, as well as to identify and flag defective railcars so they can be repaired.  Dkt. No. 48 ¶¶ 1, 2. Once a car is flagged, a crew must remove the defective car from the train.  Id. ¶ 5.

On the day in question, CSX assigned Plaintiff and a co-worker, Ryan Bartram, to perform brake tests on two outbound rail cars: Q45530 and Q25130.  Id. ¶ 12.  Because the entire train was slated to leave by 2:30 p.m., the inspectors were expected to finish their tests by 2:00 p.m. in accordance with the Rice Yard Operating Plan.  Dkt. No. 47 at 6.  Bartram and Plaintiff completed the brake test on Q45530 without issue, but before the two could complete the brake test on Q25130, Bartram had to leave work, so Plaintiff was left by himself to complete the brake test on Q25130. Dkt. No. 48 ¶¶ 14-15.  As a result, Defendant Brian Murray, the senior general foreman for CSX, assigned two other inspectors to assist Plaintiff in completing the brake test on Q25130.  The parties dispute what happened when the two inspectors arrived to help Plaintiff, compare id. ¶ 22 ("Grantham did not accept [the inspectors'] help."); with dkt. no. 63 ¶ 22 ("I couldn't stop [the inspectors] from helping me."), but both agree that, as a result, the inspectors understood that they were not needed for help on the brake test.

Defendant Murray drove to the track to check on Q25130 at 2:10pm, and at that time discovered the brake test on that car had not yet been completed. Dkt. No. 48 ¶ 24. When Murray called to ask why the brake test wasn't finished yet, the replacement inspectors told Murray that Plaintiff had told them he didn't need their help. Id. ¶¶ 25-26. Plaintiff ended up completing the brake test at 2:30 p.m., flagging the railcar as defective. Id. ¶ 27.

As a result of Plaintiff flagging Q25130 as defective, the train to which it was connected was delayed until 4:32 p.m. while a crew removed Q25130 from the tracks. Dkt. No. 47-4 at 67. Defendant Murray then entered an assessment of rule violations against Plaintiff, asserting that he broke CSX Operating Rule 104 1, Section 3. That rule provides that, "[w]hen on duty, employees must perform the duties in a safe and efficient manner that prevents unnecessary delay to customers." Id. at 50. The parties dispute for which reason Murray assessed the violation, with Defendants arguing the assessment was entered because Plaintiff was "inefficient," dkt. no. 48 ¶ 33, and Plaintiff arguing it was applied as a pretext for retaliation against him because he flagged the railcar as defective, causing the train to be delayed from 2:30 to 4:32 p.m., dkt. no. 62 at 8-9 (citing dkt. no. 47-4 at 67).

At a CSX hearing held to determine Plaintiff's responsibility, the hearing officer Defendant Gus Thoele reviewed

testimony, exhibits and other evidence and then produced findings stating that he believed the assessment had a sufficient factual ground. Dkt. No. 47 at 8 (citing Dkt. Nos. 47-1 at 274-75, 47-4 at 63-64). Chief Mechanical Officer Turner reviewed the evidence and findings and found Plaintiff had not worked in an efficient manner in violation of rule 104.1, Section 3; Thoele assessed Plaintiff with a three-day suspension. Dkt. No. 47 at 8; Dkt. No. 47-1 at 307.

On July 27, the day before Plaintiff's hearing and during a regularly scheduled morning safety call, a CSX employee stated "[w]hen you're attacked by a bunch of clowns, go for the [juggler/jugular]."[1] Dkt. No. 47 at 9; Dkt. No. 62 at 9. Defendant Murray and CSX's General Foreman believed Plaintiff was the speaker, and due to the comment being made one day before Plaintiff's hearing, Defendants Murray, Gardner and Turner believed Plaintiff was making a threat of workplace violence. Dkt. No. 48 ¶ 46. As a result, CSX temporarily removed Plaintiff while it investigated the comment.[2]  Id. ¶ 49. That same day, another

---

[1] The parties dispute whether the employee stated "jugular," see dkt. no. 47 at 9, or "juggler," see dkt. no. 62 at 9. Defendants believe the employee said jugular, while Plaintiff believes the employee said juggler. The Court will refer to it as the "clown comment." For purposes of Defendants' motion for summary judgment, the Court will assume Plaintiff's version is true, whereas for Plaintiff's partial motion for summary judgment, the Court will assume Defendants' version is true.

[2] It is undisputed that Plaintiff did not lose any pay or benefits because of this temporary removal and investigation. Dkt. No. 48 ¶ 57. Plaintiff argues he suffered anxiety and stress from this incident, dkt. no. 62 at 11, but such damages do not represent an "adverse personnel action" under the FRSA. See

employee came forward and admitted to Plaintiff that he himself had made the comment, but Plaintiff did not disclose this to any of the Defendants or deny responsibility for the comment.  Id. ¶ 51.  CSX arranged an expedited fact-gathering hearing for the comment on August 2, four days after temporarily removing Plaintiff; and after the other employee took responsibility for the comment, CSX exonerated Plaintiff, and he returned to work the next day.  Id. ¶¶ 54-56.

Plaintiff filed the instant suit against CSX and three employees, Brian Murray, Rebecca Gardner, and Gus Thoele.  See Dkt. No. 9. Murray is a manager for CSX who entered the Q25130 delay assessment against Plaintiff, Rebecca Gardner is a manager for CSX who entered an assessment against Plaintiff for the clown comment, and Gus Thoele is the hearing officer for the July 28 hearing.  Id. ¶¶ 3-5, 22, 25, 31.  Both sides have brought motions for summary judgment, see dkt. nos. 46, 52, with Defendants seeking dismissal of Plaintiff's claims and Plaintiff seeking summary judgment against CSX only on the issue of liability.  The parties contest the same points of law in both motions, and so they are addressed jointly below.  To the extent there are differences in arguments, the Court will analyze Defendants' motion first and Plaintiff's motion second.

---

Hayes v. CSX Transp., Inc., ALJ Case No. 2020-FRS-00001, slip op. p. 11 (Jan. 14, 2020).

For the reasons that follow, Defendants' motion for summary judgment is **GRANTED** as to the individual Defendants and **DENIED** as to CSX, and Plaintiff's motion for summary judgment is **DENIED**.

## LEGAL STANDARD

### 1. FRSA Claims

The Federal Rail Safety Act ("FRSA") was created to "promote safety in every area of railroad operations and reduce railroad-related accidents and incidents." 49 U.S.C. § 20101. In 2007, Congress amended the FRSA to include protections for railroad workers against retaliation, stating a rail carrier "may not discharge, demote, suspend, reprimand, or in any other way discriminate against an employee if such discrimination is due, in whole or in part," to the employee's protected activity. 49 U.S.C. § 20109(a)(4).

To succeed under an anti-retaliation claim, a plaintiff must show 1) he engaged in protected activity, 2) the employer knew he engaged in said activity, 3) the employee suffered an adverse employment action, and 4) the protected activity was a "contributing factor" in the adverse action. See 49 U.S.C. §§ 20109(d)(2), 42121.[3] If the plaintiff establishes a prima facie case, then the employer is liable unless it proves "by clear and

---

[3] While this standard appears similar to the McDonnell-Douglas burden-shifting framework, see McDonnell Douglas Corp. v Green, 411 U.S. 792 (1973), the causation standard is lower in FRSA cases than in Title VII cases. See Araujo v N.J. Transit, 708 F.3d 152, 159 (3d Cir. 2013).

convincing evidence, that [it] would have taken the same unfavorable personnel action in the absence of [the plaintiff's protected] behavior."  49 U.S.C. § 42121(b)(2)(B)(ii).  Clear and convincing evidence is "a conclusive demonstration, i.e., that the thing to be proved is highly probable or reasonably certain." Lancaster v. Norfolk S. Ry. Co., ARB No. 2019-0048, ALJ No. 2018-FRS-00032, 2021 DOL Ad. Rev. Bd. LEXIS 19, at *12 (ARB Sept. 30, 2015).[4]

### 2. Summary Judgment

Further, summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute is "genuine" where the evidence would allow "a reasonable jury to return a verdict for the nonmoving party."  FindWhat Inv. Grp. v. FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  A fact is "material" only if it "might affect the outcome of the suit under the governing law."  Id. (quoting Anderson, 477 U.S. at 248).

The moving party bears the initial burden of demonstrating

---

[4] The Department of Labor ("DOL") Administrative Review Board ("ARB") issues final DOL agency decisions for the Secretary of Labor under FRSA cases. Therefore, under Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S 837 (1984), this Court should defer to the ARB's decision unless it is not supported by "substantial evidence." Winch v. Director, OWCP, 725 F. App'x 768, 771 (11th Cir. 2018) (unpublished).

the absence of a genuine issue of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The movant must show the court that there is an absence of evidence to support the nonmoving party's case.  See id. at 325.  If the moving party discharges this burden, the burden shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist.  See Anderson, 477 U.S. at 257.

The nonmovant may satisfy this burden in one of two ways. First, the nonmovant "may show that the record in fact contains supporting evidence, sufficient to withstand a directed verdict motion, which was 'overlooked or ignored' by the moving party, who has thus failed to meet the initial burden of showing an absence of evidence."  Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1116 (11th Cir. 1993) (quoting Celotex Corp., 477 U.S. at 332 (Brennan, J., dissenting)).  Second, the nonmovant "may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency."  Id. at 1117.  Where the nonmovant attempts to carry this burden with nothing more "than a repetition of his conclusional allegations, summary judgment for the [movant is] not only proper but required." Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981) (citing Fed. R. Civ. P. 56(e)).

**ANALYSIS**

Both parties agree that reporting defective railcars is considered a protected activity, and both parties agree that the three-day suspension is an adverse action as defined by FRSA. See Dkt. Nos. 46, 52. They disagree, however, on four points: 1) whether FRSA's causation standard requires proof of retaliatory animus to show a prima facie case of intentional retaliation, or if it can be proven through temporal proximity, 2) whether the temporary removal after the clown comment is an adverse action, 3) whether the individual Defendants are liable as decision-makers, and 4) whether punitive damages are warranted.

## I.    FRSA Claims

As to causation, the parties disagree as to whether FRSA requires proof of retaliatory animus in order to establish causation, see dkt. no. 47 at 23-26, or whether but-for causation shown through temporal proximity is enough to establish the employee's protected activity was a "contributing factor" in the employer's adverse action, see dkt. no. 53 at 11-12. The Eleventh Circuit has not yet decided the issue, but it has been addressed in a number of other circuits. See Araujo, 708 F.3d at 158-59 (finding an employee need not prove retaliatory motive in their prima facie case); cf. Lemon v. Norfolk S. Ry. Co., 958 F.3d 417 (6th Cir. 2020) (using retaliatory animus as the standard); Armstrong v. BNSF Ry. Co., 880 F.3d 377, 382 (7th Cir. 2018) (finding that although the "contributing factor" standard is

"lower than those applied in other anti-discrimination contexts,"
it still requires "proof of retaliatory motive").

Because Plaintiff's reliance on Araujo ignores recent DOL ARB
decisions and other circuits' decisions requiring proof of
intentional retaliation to establish causation, and because
Plaintiff does not present evidence outside of his own speculative
testimony to support a showing of intentional retaliation, the
correct path is to apply the "proof of retaliatory motive" standard
laid out in Armstrong and other caselaw.  However, the record
evidence suggests a reasonable juror could find there was proof of
retaliatory motive, so Defendants' motion for summary judgment as
to the FRSA claim against CSX regarding the 104.1, Section 3
violation is **DENIED**.

### A. Causation Dispute

#### 1.  The "but-for" standard

Plaintiff relies on Araujo to argue that the "contributing
factor" standard is "broad and forgiving," and as such "[a]n
employee '*need not* demonstrate the existence of a retaliatory
motive on the part of the employee taking the alleged prohibited
personnel action in order to establish that his [protected
activity] was a contributing factor to the personnel action."  Dkt.
No. 62 at 18 (citing Araujo, 708 F.3d at 158) (emphasis in
original).  Instead, an employee "will prevail by showing that the
reason for the adverse action offered by the railroad, 'while true,

is only one of the reasons for its conduct, and another [contributing] factor is the complainant's protected' activity." Id. at 22 (citing Hutton v. Union Pacific R.R. Co., ARB No. 11-091, 2013 WL 2450037, at *5 (ARB May 31, 2013)); see also Wittig v. CSX Trans. Inc., No. 4:16-CV-50, 2017 WL 2177342, at *3 (S.D. Ga. May 17, 2017) (noting "if there is an issue of fact as to whether Plaintiff's protected activity even *contributed* to his suspension, he may survive summary judgment" (emphasis in original)).

Plaintiff also points to Bostock v. Clayton County, 140 S. Ct. 1731, 1738 (2020), as support for the "but-for" causation standard. He argues that the "because of" language in Title VII uses but-for causation, and this language mirrors FRSA's "due in whole or in part" language. Dkt. No. 62 at 19. He explains that this Court should "change one thing at a time and see if the outcome changes. If it does, we have found but-for cause." Bostock, 140 S. Ct. at 1739.

Relying on this authority, Plaintiff argues that temporal proximity alone is enough to satisfy the contributing factor standard. Plaintiff argues that since he was disciplined for the delay in trains so close to him flagging the rail car as defective, he has met his burden to establish a prima facie case. Dkt. No. 62 at 24-25.

2. **The "intentional retaliation" standard**

11

Defendants argue that the correct standard is the one applied by the DOL ARB and the Second, Fourth, Fifth, Sixth, Seventh, and Eighth Circuits.  See Acosta v. Union Pac. Ry. Co., ARB Case No. 2018-0020, slip op. at 6 (Jan. 20, 2020); Tompkins v. Metro-North Commuter R.R. Co., No. 18-3174, 2020 WL 7392233, at *6 (2d Cir. 2020); Lowery v. CSX Transp., Inc., 690 F. App'x 98, 101 (4th Cir. 2017); Yowell v. Admin. Rev. Bd., 993 F.3d 418, 424 (5th Cir. 2021); Lemon v. Norfolk S. Ry. Co., 958 F.3d 417, 420 (6th Cir. 2020); Armstrong v. BNSF Ry. Co., 880 F.3d 377, 382 (7th Cir. 2018); Kuduk v. BNSF Ry. Co., 768 F.3d 786, 792 (8th Cir. 2014). These circuits explain that in order to satisfy the "contributing factor" aspect of FRSA's anti-retaliation statute, an employee must prove "retaliatory animus." Lowery, 690 F. App'x at 101.  In other words, "when an employee engages in a protected activity such as reporting a workplace injury, that employee is not insulated from what would otherwise be appropriate discipline for misconduct that becomes known to the employer at that time or during the course of the employer's addressing the protected activity." Yowell, 993 F.3d at 424.

> 3. **An FRSA plaintiff must prove the forbidden motive was a contributing factor in the decision to impose an adverse action.**

The intentional retaliation standard is the correct standard to apply in this case.  It is true that the FRSA made the anti-

retaliation provision especially tough on railroads to provide broad protections for workers.   See Araujo, 708 F.3d at 156. However, this causation standard must have a limit—it cannot be that Congress intended to protect a railroad worker against *any* misconduct, simply by virtue of that worker committing it shortly before or after engaging in protected activity.   It is important to limit causation to instances where the employee can prove intentional retaliation, particularly when the employee "routinely engages in protected conduct as a normal part of his job duties[.]" Dkt. No. 47 at 27.

The ARB shares this view.   In Acosta, the ARB recognized that "[t]he limited causal value of temporal proximity is especially prominent in a whistleblower case where most of a[n employee's] job may consist of protected activity."   ARB Case No. 2018-0020, slip op. at 8.   In such cases, where the employee regularly engages in protected conduct as part of his job duties, the ARB held that proof of retaliation for engaging in protected activity requires more than the mere temporal relationship that an adverse action followed an instance of protected activity.   Id.

Plaintiff's arguments and cases cited in support of the but-for standard miss the mark.   Plaintiff cites to Stone v. Webster Engineering Corp., 115 F.3d 1568 (11th Cir. 1997), for support, arguing that because the court there found the causation standard

in a similar statute[5] encapsulated temporal proximity, this Court should follow suit. See Dkt. No. 76 at 2. This argument does not fully consider what the court did in Stone, though. The court in Stone acknowledged there was *more* than mere temporal proximity, leading the court to say "[g]iven this proximity in time *and the circumstances as laid out above* [that two other employees were recommended for demotion, but only the employee who engaged in protected activity was actually demoted], we see no grounds for gainsaying the . . . inference of causation." 115 F.3d at 1573. The fact that the Eleventh Circuit relied on more than mere temporal proximity in Stone shows how that case does not establish temporal proximity alone is enough to prove causation.

4. **The "intentional retaliation" standard as applied to this case.**

Defendants rely on the intentional retaliation standard to argue that Plaintiff cannot prove a prima facie case of retaliation, and, even if he can, Defendants have clear and convincing evidence that CSX would have disciplined him even if he hadn't flagged a railcar. Defendants argue that it is undisputed that inspectors are supposed to flag defective railcars, and indeed CSX disciplines inspectors who fail to flag defective railcars. See Dkt. No. 47 at 22. In addition, Murray, Gardner and Turner

---

[5] The Energy Reorganization Act ("ERA"), 18 U.S.C. § 5851(b)(3)(A) (using the same "contributing factor" standard as used in FRSA).

all testified that Plaintiff did exactly what he was supposed to
do when he flagged the defective railcar—making it clear that the
issue was him telling the other inspectors their help was not
needed and subsequently finishing the brake test late, not flagging
the defective railcar.  Id. at 25.  Even so, a reasonable juror
could find that CSX acted against Plaintiff with retaliatory
animus.

The record shows that the train would have been delayed
whether Plaintiff finished the brake test at 2 or 2:30. It is
undisputed that the crew removing defective railcars would have
taken some time to do so.  And Plaintiff asserts that he took a
similar amount of time completing the morning brake test (with the
assistance of Bartram) as he took completing the afternoon brake
test.  See Dkt. No. 62 at 8.  Plaintiff also asserts he has
previously been told by CSX managers not to report defective
railcars.  Id. at 3.  Defendants argue that this fact is negligible
because the train would have been delayed either way, since "CSXT
needed to complete a number of additional tasks, including removing
the railcar Murray previously tagged as defective, before the train
could depart the yard–regardless of whether Plaintiff reported
additional defective railcars."  Dkt. No. 72 at 10.

However, this suggests that Plaintiff's actions did not cause
unnecessary delay and points to one of two scenarios: 1) Turner
truly relied *only* on the first part of Rule 104.1, Section 3

15

(workers must complete their work efficiently), which Plaintiff argues has never been done before, or 2) the rule assessment was a pretext for a retaliatory motive, which would make the disciplinary assessment and the ensuing suspension retaliatory under FRSA. Since a reasonable juror could credit Plaintiff's version of events, Plaintiff has thus shown enough to prove a prima facie case at this stage of litigation.

> ### B. Defendants cannot show by clear and convincing evidence that they would have assessed the violation in the absence of Plaintiff's protected activity.

Defendants argue that, even if Plaintiff proves a prima facie case, clear and convincing evidence shows that Murray's assessment against Plaintiff did not rely upon Plaintiff's flagging (or not flagging) a defective railcar. Dkt. No. 46 at 29-32. Murray went out to check on Plaintiff's progress at 2:10 p.m., while Plaintiff was still handling the brake test. Dkt. No. 47 at 30 (citing Dkt. No. 47-2 at 41, 48-49, 73). It was at that time that Murray discovered Plaintiff's rule violation, not when he reported the defective railcar twenty minutes later. Id. Plaintiff argues that CSX cannot establish this affirmative defense through clear and convincing evidence because (1) he was the only carman at Rice Yard that CSX charged with not performing a brake test in a reasonable amount of time between January 1, 2015 and December 31, 2017, and (2) Plaintiff is "the only carman to ever be charged

with violating CSXT Operating Rule 104.1(3) for an event that did not involve causing damage to equipment." Dkt. No. 53 at 13.

The clear-and-convincing-evidence burden is a steep hill for Defendants to climb, and not by accident. They must show that CSX "would have taken the same employment actions even in the absence of Plaintiff's protected activity." Bozeman, 456 F. Supp. 2d at 1360. Taking all reasonable inferences in Plaintiff's favor, CSX cannot meet this burden. Here, the record shows the train would not have been delayed as much as it was Plaintiff not reported the bad railcar. See Dkt. No. 47-5 at 36:15-22. And while CSX contends the underlying basis for Plaintiff's discipline was Murray discovering he had turned away help, the hearing officer, Gus Thoele, stated the effect of Plaintiff's actions was "[t]he train was delayed 2 hours and 2 minutes by the railroad employee's actions." Dkt. No. 53-4 at 40. Noting that the large majority of this delay, if not all of it, was due to Plaintiff's bad-ordering the railcar instead of his turning away help, it is open to debate whether CSX would have acted the same way in the absence of Plaintiff's protected activity.

Taking all reasonable inferences in Plaintiff's favor, a reasonable juror could find that Plaintiff has shown a prima facie case of retaliation, and that CSX cannot show clear and convincing evidence that it would have still assessed the Rule 104.1, Section 3 charge absent Plaintiff reporting the defective railcar. As

such, Defendants' motion for summary judgment as to the FRSA claim
regarding the discipline assessed against Plaintiff is **DENIED**.

### C. The Clown Comment

Plaintiff next argues that his temporary removal is an adverse
action, and thus actionable under FRSA, because Defendants brought
disciplinary charges, held Plaintiff out of service, and held a
hearing to determine whether Plaintiff made the clown comment after
knowing he did not make the comment.  Dkt. No. 62 at 10, 16.
Defendants respond that, in the Eleventh Circuit, "to rise to the
level of an adverse action, the retaliatory act must be a
'materially adverse' action, meaning an action that well might
have dissuaded a reasonable worker from engaging in the protected
activity."  Dkt. 47 at 28 (quoting Stapleton v. CSX Transp., Inc.,
No. 3:19-cv-413, 2021 WL 1193373, at *12 (Mar. 30, 2021)).
Defendants argue that courts in this Circuit have found "the mere
threat of termination is not an adverse employment action" when
the plaintiff was ultimately not terminated.  See Bozeman v. Per-
Se Techs., 456 F. Supp. 2d 1282, 1360 (N.D. Ga. 2006).

Defendants argue that Plaintiff, while temporarily removed
from service, never lost pay or benefits and was immediately
exonerated after an expedited hearing on the clown comment.  Dkt.
No. 47 at 28-29.  Plaintiff argues that he was not made whole, as
he was "distraught" when pulled out of service.  Dkt. No. 62 at
11.  Plaintiff does not cite to authority to support being

18

"distraught" over an investigation in which he was ultimately exonerated is considered an adverse action. Id. at 17.  Indeed, Plaintiff points only to a declaration from a co-worker, John Thrift, that "CSXT was sending a message that those who bad order cars will be target[ed] for discipline[.]" Dkt. No. 65-1.  This is the only outside support to which Plaintiff cites as authority for showing that the investigation well might have dissuaded a reasonable worker from engaging in the protected activity.

The issue with Thrift's affidavit, however, is that it was made on Thrift's own subjective belief.  It does not, for example, point to any similar examples or any other reason to believe CSX had an illicit motive. This Circuit has held that affidavits based upon information and belief are insufficient to withstand a motion for summary judgment.  See Ellis v. England, 432 F.3d 1321, 1327 (11th Cir. 2005).  Because Plaintiff does not point to any other support to show the investigation was an adverse action, Defendants' motion for summary judgment as to the FRSA claim regarding the clown comment is **GRANTED.**

## II.  The Individual Defendants

Defendants argue that the individual Defendants, Murray, Gardner and Thoele, should be dismissed from the case because Plaintiff cannot establish the elements of an FRSA claim against them.  Dkt. No. 47 at 32.  Specifically, they argue that these three Defendants had no role in making the decision whether to

suspend Plaintiff or not—that responsibility lied with Turner and Turner alone.  Id.  Plaintiff argues that because these Defendants knew that the charges were based on the train delay (caused by Plaintiff flagging the defective railcar), they should have done more to stop Turner from assessing the suspension.  Dkt. No. 62 at 30-31.

It is undisputed that Defendants Murray, Gardner and Thoele were not decision-makers with regard to adverse actions against Plaintiff.  See Dkt. No. 72 at 3 ("Grantham does not dispute that Murray, Gardner, and Thoele did not make any decisions with respect to any of Grantham's alleged adverse actions.").  Plaintiff cites to no authority showing that the mere ability to issue an assessment to be investigated, without more, is enough to show the individual Defendants were "decision-makers"—at least until the accusation is investigated and a violation is found.  Without more, there is no evidence showing that the individual Defendants actually took an adverse action against Plaintiff, and as such Defendants' motion for summary judgment is **GRANTED** on this ground, and Defendants Murray, Gardner and Thoele are dismissed as defendants in this action.

**III.  Punitive Damages**

Finally, Defendants argue that they are entitled to summary judgment on Plaintiff's claim for punitive damages because he cannot show CSX "acted with malice or ill will or with knowledge

that its actions violated federal law or with reckless disregard or callous indifference that its actions violated federal law." Dkt. No. 46 at 33 (citing Head v. Norfolk S. Ry. Co., No. 2:15-cv-2118, 2017 WL 4030580, at *18 (N.D. Ala. Sept. 12, 2017)).  It is clear from the record there is no evidence of actions that would support a claim for punitive damages.  There is no evidence that Defendants "consciously disregarded [Plaintiff's] statutorily-protected rights under the FRSA," and Defendants' multiple rounds of training to protect against same foreclose Plaintiff's claim for punitive damages.  Pan Am Rys., Inc. v. U.S. Dep't of Lab., 855 F.3d 29, 38 (1st Cir. 2017); see also Dkt. No. 46 at 34 (listing the different types of training CSX has its employees go through on the protections afforded by FRSA).  As such, there is no genuine dispute of material fact as to punitive damages, and Defendants are thus **GRANTED** summary judgment on this ground.

**CONCLUSION**

For the above stated reasons, Defendants' motion for summary judgment, dkt. no. 46, is **DENIED in part** and **GRANTED in part**.  The motion is **DENIED** as to the FRSA claim against Defendant CSX and **GRANTED** as to the claims against the individual Defendants. Plaintiff's partial motion for summary judgment, dkt. no. 52, is **DENIED.**

**SO ORDERED** this 7th day of March, 2022.


_____
HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA